IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI COOLERS, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:17-cv-424-RP |
| JDS INDUSTRIES, INC.; | § § | |
| LIONEL LANDRY, JR., *d/b/a Accolades Awards & Engraving*; | § § § § | |
| CREATIVE AND FAST LLC, *d/b/a Promotional Products San Antonio*; and | § § § § | |
| KELLY SCOGGINS, *d/b/a King Engraving*; | § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendant Kelly Scoggins d/b/a King Engraving's ("King Engraving") Motion to Dismiss, (Dkt. 64), and related filings. Having considered the parties' submissions and the relevant law, the Court will deny the motion.

**I. Background**

Plaintiff YETI Coolers, LLC ("YETI") develops, manufactures, and sells insulated drinkware. (Am. Compl., Dkt. 41, at 4). King Engraving is a laser-engraving business that sells insulated drinkware and other products. (Mem. Mot. Dismiss, Dkt. 65, at 4–5). YETI filed this action against King Engraving and other defendants on May 5, 2017, alleging that the defendants infringed and diluted YETI's trademarks and the trade dress of YETI products. (Compl., Dkt. 1).

In its amended complaint, YETI alleges that King Engraving sold insulated drinkware that unlawfully imitates YETI's trademarks and the trade dress of several products: the YETI 30 oz. Rambler™ Tumbler ("30 oz. tumbler"), the YETI 20 oz. Rambler™ Tumbler ("20 oz. tumbler"), the

1

YETI Rambler™ Lowball ("10 oz. lowball"), and the Rambler™ Colster® Beverage Holder ("beverage holder"). (*See id.* at 12 (listing King Engraving's allegedly infringing products)). Specifically, YETI asserts claims for: (1) state- and federal-law trademark infringement; (2) state- and federal-law trademark dilution; (3) state- and federal-law trade dress infringement; (4) state and federal-law trade dress dilution; (5) state- and federal-law unfair competition; (6) state-law misappropriation; and (7) state-law unjust enrichment. (*Id.* at 16–35).

In its motion to dismiss, King Engraving argues that Federal Rule of Civil Procedure 12(b)(6) requires that the Court dismiss each of YETI's causes of action because YETI has in each case failed to state a claim upon which relief can be granted. (Mot. Dismiss, Dkt. 64, at 3). Specifically, King Engraving argues that: (1) YETI's trademark infringement and related claims fail because it has not sufficiently pleaded facts to support the claim; (2) YETI's trade dress claims fail because it has not described its trade dress with sufficient particularity; (3) YETI's trade dress claims fail because there is no likelihood of confusion with King Engraving's products; (4) YETI's trade dress claims fail because it has not sufficiently pleaded that its trade dress is nonfunctional; (5) YETI's dilution claims fail because it has not pleaded sufficient facts to show that either its trademarks or its products' trade dress are famous; and (6) YETI's unfair competition, misappropriation, and unjust enrichment claims are derivative of its trademark and trade dress claims, and therefore fail for the same reasons. (*Id.* at 2–3).

This is not the Court's first occasion to consider a Rule 12(b)(6) motion against YETI for these sorts of claims. The Court recently denied two motions to dismiss in cases involving claims related to the trade dress of YETI products: *YETI Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-CV-663-RP, 2017 WL 5515910 (W.D. Tex. Mar. 30, 2017) and *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017). Although both cases

contained claims pertaining to the trade dress of several of the YETI products at issue in this action, neither case contained any claims related to YETI trademarks.

## II. Legal Standard

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. Trademark Infringement and Unfair Competition

YETI claims that King Engraving has infringed five of its trademarks: two trademarks of the word "YETI," one for a stylized version of the word "YETI" in slanted block typeface, one for the phrase "YETI COLSTER," and one for the phrase "YETI RAMBLER COLSTER." (Am. Compl., Dkt. 41, at 10–11, 14–16).[1] YETI alleges that all of the defendants in this case—including King

---

[1] YETI asserts trademark infringement claims under federal and Texas common law. (Am. Compl., Dkt. 41, at 19 (trademark infringement under 15 U.S.C. § 1114(1)); 22 (trademark infringement under 15 U.S.C. § 1125(a)); and 29 (common law trademark infringement)). YETI also asserts claims for federal- and state-law unfair competition in connection with its trademarks. (*Id.* at 26 (unfair competition under 15 U.S.C. § 1125(a)); 30 (common-law unfair competition)). Because the same rules and standards apply to federal- and state-law trademark infringement and unfair competition claims, the Court will analyze them together using federal trademark law. *Amazing Spaces, Inc. v. Metro Mini*

3

Engraving—"have unlawfully used and continue to unlawfully use" the "YETI" trademarks (or colorable imitations) in "advertising, promoting, offering to sell, selling, and distributing" infringing products. (*Id.* at 14). YETI also alleges that King Engraving is similarly infringing the "YETI COLSTER" and "YETI RAMBLER COLSTER" trademarks. (*Id.*). YETI alleges that King Engraving's trademark infringement is intentional. (*Id.* at 16).

As an example of King Engraving's infringing uses of YETI's trademarks, YETI provides the following illustrations:



*Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citation and quotation marks omitted)); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009) ("The same legal standard applies to Lanham Act infringement claims, Texas statutory trademark infringement claims, Texas common-law trademark infringement claims, and federal and state unfair competition claims.").

4

(*Id.* at 15). YETI then alleges that, "[a]s a result of Defendants' activities related to" their use or imitations of YETI's trademarks, "there is a likelihood of confusion" between the defendants' products and YETI's. (*Id.*). YETI does not allege any other facts about when, where, or how King Engraving used the illustrated mark.

King Engraving argues that YETI fails to state a claim for trademark infringement or unfair competition because YETI "failed to plead any facts establishing that King Engraving infringed upon its trademarks." (Mem. Mot. Dismiss, Dkt. 65, at 7). Specifically, King Engraving points out that YETI's amended complaint contains no facts about dates of use, details of sales, or descriptions of advertising. (Reply, Dkt. 75, at 3). YETI's amended complaint contains no allegations that King Engraving ever advertised or sold "Better YET!" products on its website, and King Engraving argues that webcaptures from co-defendant JDS Industries' website—none of which display any "Better YET!" products—are insufficient to establish a plausible basis for alleging that it sold, advertised, or otherwise unlawfully used infringing products. (*Id.* at 2–3).

To recover on a claim of trademark infringement, a plaintiff must first show "that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). The Lanham Act provides a cause of action for infringement where one "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* In the Fifth Circuit, courts consider a number of contextual factors to determine whether a likelihood of confusion exists, including the similarity of design between the marks, the similarity of advertising media used, and the defendant's intent. *Id.*

5

King Engraving does not dispute that YETI adequately pleaded that its marks are legally protectable; it focuses instead on YETI's allegations regarding likelihood of confusion. (Mem. Mot. Dismiss, Dkt. 65, at 7). YETI responds that its allegation that King Engraving "use[s] 'Better YET!' in connection with the infringing products," together with the four photographs reproduced above, are sufficient to state a claim. (Resp., Dkt. 72, at 4). The Court agrees with YETI that its allegations are sufficient to state a claim for each of YETI's trademark claims.

Because likelihood of confusion is an element of a trademark infringement claim, YETI's complaint must contain factual allegations that when assumed to be true "raise a right to relief above the speculative level" with respect to that element. *Cuvillier*, 503 F.3d at 401 (citation and quotation marks omitted). YETI has done so. YETI alleges that King Engraving has used infringing marks in "advertising, promoting, offering to sell, selling, and distributing" its products and that it has done so intentionally. (Am. Compl., Dkt. 41, at 14–16). YETI's complaint identifies its trademarks and contains photographs identifying the allegedly infringing marks on representative products. (*Id.* at 14–15). True, YETI does not "specifically describe" King Engraving's infringing use by listing "dates," "details of sale," or "descriptions of advertising." (Reply, Dkt. 75, at 3). But YETI is not required to make "detailed factual allegations," *Cuvillier*, 503 F.3d at 401; it must only allege enough facts to "raise a right to relief above the speculative level." *Id.* YETI's allegations, including the photographs, contain facts relevant to the strength of YETI's mark, the similarity between YETI's mark and the "Better YET!" mark allegedly used by King Engraving, the similarity between YETI's drinkware and the drinkware on which the "Better YET!" mark appears, and King Engraving's intent. Taken as true, these allegations are all evidence that the "Better YET!" mark, which YETI alleges that King Engraving used commercially, creates a likelihood of confusion between YETI's marks and the "Better YET!" mark. Whether these facts will ultimately be enough to prove a

likelihood of confusion is not the inquiry at this stage;[2] the Court's task is only to consider whether YETI's allegations are sufficient to make it more than merely speculative that the company might be entitled to relief. The Court finds that they are.

### IV. Trade Dress Infringement and Unfair Competition

YETI also claims that King Engraving is infringing the trade dress of several YETI products. (Am. Compl., Dkt. 41, at 21, 28).[3] King Engraving argues that YETI has failed to state a claim for trade dress infringement because it failed to plead sufficient facts to support several elements. (Mot. Dismiss, Dkt. 64, at 2).

The Lanham Act provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(1). "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citation and quotation marks omitted).

To succeed on an infringement or unfair competition claim under the Lanham Act, a plaintiff must establish three elements. First, the plaintiff must establish "that the mark or trade dress, as the case may be, qualifies for protection." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998). To qualify for legal protection, the trade dress must be inherently distinctive or have achieved secondary meaning in the public's mind; that is, it must have "come through use to be uniquely associated with a specific source." *Id.* (internal quotations and citations omitted). Second,

---

[2] "As a general matter, whether infringement creates a likelihood of confusion is a question of fact that should not be addressed in a Rule 12(b)(6) motion." *IVFMD Fla., Inc. v. IVFMD, P.A.*, No. 3:13-CV-3527-N, 2014 WL 11515574, at *6 (N.D. Tex. Mar. 7, 2014) (consulting the factors relevant to likelihood of confusion only for the purpose of determining whether the plaintiff had alleged facts sufficient to survive a Rule 12(b)(6) motion to dismiss).

[3] As with its trademark claims, YETI asserts claims for trade dress infringement and unfair competition under federal and state law. (Am. Compl., Dkt. 41, at 21, 26, 28, 30). Because "[t]he same tests apply to both trademarks and trade dress to determine whether they are [protectable] and whether they have been infringed," *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), the same standards apply to trade dress infringement claims under federal and state law, *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d at 236 n.7. The Court will therefore analyze all of YETI's trade dress infringement claims under federal law.

the plaintiff must show that the defendant's use of the trade dress creates "a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship" of the defendant's product or service. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (internal quotations and citations omitted). Third, trade dress is only entitled to legal protection if it is nonfunctional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (noting that the Lanham Act gives the person asserting protection of unregistered trade dress the burden to prove that the trade dress is not functional).

In addition to those elements, a plaintiff must "articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882 (S.D. Tex. 2014) (citing *Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 Fed. App'x. 672, 677–81 (5th Cir. 2006), which held that a complaint in which the plaintiffs identified the elements comprising their claimed marks was sufficient to survive a motion to dismiss).

In this case, YETI alleges that it has protectable trade dress rights in four of its products: its 30 oz. tumbler, 20 oz. tumbler, 10 oz. lowball, and beverage holder. (Am. Compl., Dkt. 41, at 5–10). Below are YETI's descriptions of its trade dress for each product, along with an exemplary image:

8

| YETI product | Exemplary image | Trade dress description |
|---|---|---|
| 30 oz. tumbler | | "[T]he overall look, design, and appearance of the [30 oz. tumbler], which includes the design and appearance of the curves, tapers, and lines in the [30 oz. tumbler]; the design and appearance of the profile of the [30 oz. tumbler]; the design and appearance of the walls of the [30 oz. tumbler]; the design and appearance of the rim of the [30 oz. tumbler]; the design, appearance, and placement of the taper in the side wall of the [30 oz. tumbler]; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the [30 oz. tumbler]; the design, appearance, and placement of the style line around the base of the [30 oz. tumbler]; the design, appearance, and placement of the tab on the lid of the [30 oz. tumbler]; the design, appearance, and placement of the drinking opening on the lid of the [30 oz. tumbler]; the design, appearance, and placement of the top plane of the lid of the [30 oz. tumbler]; the design, appearance, and placement of the side walls of the lid of the [30 oz. tumbler]; the color contrast and color combinations of the [30 oz. tumbler] and the tumbler lid of the [30 oz. tumbler]; and the relationship of these features to each other and to other features." |

| | | |
|---|---|---|
| 20 oz. tumbler |  | "[T]he overall look, design, and appearance of the [20 oz. tumbler], which includes the design and appearance of the curves, tapers, and lines in the [20 oz. tumbler]; the design and appearance of the profile of the [20 oz. tumbler]; the design and appearance of the walls of the [20 oz. tumbler]; the design and appearance of the rim of the [20 oz. tumbler]; the design, appearance, and placement of the taper in the side wall of the [20 oz. tumbler]; the design, appearance, and placement of the style line around the base of the [20 oz. tumbler]; the design, appearance, and placement of the tab on the lid of the [20 oz. tumbler]; the design, appearance, and placement of the drinking opening on the lid of the [20 oz. tumbler]; the design, appearance, and placement of the top plane of the lid of the [20 oz. tumbler]; the design, appearance, and placement of the side walls of the lid of the [20 oz. tumbler]; the color contrast and color combinations of the [20 oz. tumbler] and the tumbler lid of the [20 oz. tumbler]; and the relationship of these features to each other and to other features." |
| 10 oz. tumbler |  | "[T]he overall look, design, and appearance of the [10 oz. lowball], which includes the design and appearance of the curves and lines in the [10 oz. lowball]; the design and appearance of the profile of the [10 oz. lowball]; the design and appearance of the walls of the [10 oz. lowball]; the design and appearance of the rim of the [10 oz. lowball]; the design, appearance, and placement of the style line around the base of the [10 oz. lowball]; the design, appearance, and placement of the tab on the lid of the [10 oz. lowball]; the design, appearance, and placement of the drinking opening on the lid of the [10 |

| | | |
|---|---|---|
| | | oz. lowball]; the design, appearance, and placement of the top plane of the lid of the [10 oz. lowball]; the design, appearance, and placement of the side walls of the lid of the [10 oz. lowball]; the color contrast and color combinations of the [10 oz. lowball] and the tumbler lid on the [10 oz. lowball]; and the relationship of these features to each other and to other features." |
| Beverage holder | | "[T]he overall look, design, and appearance of the [beverage holder], which includes the design and appearance of the curves and lines in the [beverage holder]; the design and appearance of the profile of the [beverage holder]; the design and appearance of the walls of the [beverage holder]; the design and appearance of the rim of the [beverage holder]; the design, appearance, and placement of the top plane of the upper band of the [beverage holder]; the design, appearance, and placement of the side walls of the upper band of the [beverage holder]; the design, appearance, and placement of the style line around the base of the [beverage holder]; the color contrast and color combinations of the [beverage holder] and the upper band of the [beverage holder]; and the relationship of these features to each other and to other features." |

(*Id.*). YETI alleges that King Engraving is infringing the trade dress of all four products. (*Id.* at 12).

King Engraving, meanwhile, argues that YETI's trade dress claims fail for three reasons. First, YETI has not described its trade dress with sufficient particularity. (Mot. Dismiss, Dkt. 64, at 2). Second, YETI has not adequately pleaded that King Engraving's products create a likelihood of confusion with YETI's. (*Id.*). And third, YETI has not sufficiently pleaded that its trade dress is nonfunctional. (*Id.*). The Court will address each of these arguments in turn.

*A. Articulation of YETI's Trade Dress*

Because intellectual property rights must be clearly defined, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:3 (5th ed.), YETI must "articulate the elements that comprise its protected trade dress." *New York Pizzeria*, 56 F. Supp. 3d at 882–83. Indeed, this Court has previously scrutinized YETI's articulation of its protected trade dress for two of the products at issue in this case. *Imagen Brands*, 2017 WL 2199012, at *3–4 (analyzing YETI's articulation of its trade dress of its 30 oz. tumbler and its 20 oz. tumbler). In *Imagen Brands*, the Court expressed its concern with a number of vague elements of YETI's asserted trade dress, such as the "visual flow" of the tumblers and the "appearance of design aspects" of the tumblers. *Id.* at 4. Despite these shortcomings, the Court ultimately found that YETI articulated its trade dress with sufficient specificity to survive a motion to dismiss. *See id.* (noting that, among other things, YETI's allegations concerning its "style line," "color contrasts and combinations" between the tumblers and their lids, and the tapers of the tumblers' side walls were specific, discernible aspects of the products' trade dress).

YETI's articulation of the trade dress of its 30 oz. tumbler and its 20 oz. tumbler in this action is similar but not identical to its pleading in *Imagen Brands*. In its amended complaint in this action, YETI has abandoned several of the vaguest elements from its *Imagen Brands* complaint. Gone are references to the tumblers' "visual flow"; the "visual connection and relationship" between the tumblers' curves, tapers, and lines; the "design aspects" of the tumblers; and the "overall look and appearance" of the tumblers together with their lids. *Imagen Brands*, 2017 WL 2199012, at *3. Added is a reference to the "design and appearance of the profile" of the two tumblers. (Am. Compl., Dkt. 41, at 5–7). Remaining are the elements the Court found to be sufficiently specific in *Imagen Brands*, such as the style line, the color contrasts, and the tapers of the side walls. *Imagen Brands*, 2017 WL

2199012, at *3–4; (Am. Compl., Dkt. 41, at 5–7). YETI's descriptions of the trade dress of its 10 oz. lowball and beverage holder contain the same specific elements. (Am. Compl., Dkt. 41, at 8–10).[4]

King Engraving insists that there is an "important difference" between this case and *Imagen Brands* that should "heighten[ ]" the Court's skepticism of YETI's trade dress descriptions. (Mem. Mot. Dismiss, Dkt. 65, at 12–13). King Engraving argues that because it stamps its "Polar Camel" logo and engraves custom images on its drinkware and because YETI embosses its name on its own drinkware, King Engraving should not be "forced into dubious litigation" concerning "overbroad" trade dress. (*Id.*).

Essentially, King Engraving's position is that when there's less of a likelihood of confusion, a district court should require a plaintiff to articulate its trade dress with more specificity. The Court cannot agree. To adopt King Engraving's position would require the Court to analyze the merits of YETI's trade dress claims and to then raise YETI's pleading requirements on the basis of that merits analysis. Not only is a merits analysis improper at this stage of the litigation, there is no authority— and King Engraving does not attempt to cite any—for increasing a plaintiff's pleadings requirements as a result of such an analysis.

YETI needs only to articulate its trade dress with enough specificity to allow the court to "evaluate the plausibility" of YETI's claim and provide King Engraving with "fair notice of the grounds of the claim." *New York Pizzeria*, 56 F. Supp. 3d at 883. YETI's description of its products' trade dress in this action is at least as specific as it was in *Imagen Brands*. Just as it did in *Imagen Brands*, then, the Court finds that YETI has articulated its products' trade dress with enough specificity to state a claim for relief.

---

[4] For example, YETI alleges that the trade dress for its 10 oz. tumbler includes the "design, appearance, and placement of the style line around the base" of the tumbler and the "color contrast and combinations" of the tumbler and its lid. (Am. Compl., Dkt. 41, at 8). YETI alleges that the trade dress for its beverage holder includes the style line and the color contrast and combinations between the beverage holder and the upper band. (*Id.* at 9). Those elements were sufficiently specific for the purposes of surviving a motion to dismiss in *Imagen Brands*, and they are likewise sufficient here.

*B. Likelihood of Confusion*

King Engraving also argues that YETI has failed to adequately allege that King Engraving's alleged use of YETI's trade dress creates a likelihood of confusion as to the source of King Engraving's products. (Mot. Dismiss, Dkt. 64, at 2). Here, King Engraving again argues that because King Engraving stamps its "Polar Camel" logo on its drinkware and laser engraves custom logos on its advertised drinkware and because YETI embosses its own brand name on its drinkware, YETI "cannot plausibly plead likelihood of confusion of its claimed trade dress." (Mem. Mot. Dismiss, Dkt. 65, at 10–11).

For trade dress claims, district courts look to the same factors as they do for trademark claims to determine whether a likelihood of confusion exists: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Pebble Beach*, 155 F.3d at 543.

YETI alleges in its amended complaint that King Engraving's unlawful use of YETI's trade dress creates a likelihood of confusion between the two companies' products. (Am. Compl., Dkt. 41, at 14). YETI alleges that King Engraving sells drinkware that is similar to YETI's in terms of size, shape, and material. (*See* Am. Compl., Dkt. 41, at 5–10 and 12–14 (providing exemplary images of YETI's drinkware and the allegedly infringing drinkware)). YETI alleges that King Engraving infringed on YETI's trade dress intentionally. (*Id.* at 16). The Court has held that these allegations were sufficient to state a claim for trade dress infringement in other cases;[5] the same is true in this case.

King Engraving argues that this case differs from *Magnum Solace* because the likelihood of confusion between its products and YETI's is greater. (Mem. Mot. Dismiss, Dkt. 65, at 9–11). For

---
[5] *Imagen Brands*, 2017 WL 2199012, at *7; *Magnum Solace*, 2017 WL 5515910, at *6.

example, unlike the removable label used by the *Magnum Solace* defendants, King Engraving's "Polar Camel" logo and custom-engraved designs are permanently affixed. (*Id.* at 11).[6] This distinction may matter for the purposes of determining the merits of YETI's trade dress claims, but it does not affect the sufficiency of YETI's amended complaint. The plausibility requirement does not require plaintiffs to prove that they will succeed on the merits to survive a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citation and quotation marks omitted). King Engraving's product branding and customization does not render it implausible that YETI might establish King Engraving's liability under one or more of its trade dress claims. As discussed above, YETI alleges that King Engraving sells drinkware that looks similar to YETI's, and that it does so intentionally to deceive customers about the product's source. Taken as true, as they must be at this stage, these facts are enough to state a plausible claim for relief.

### C. Functionality

Finally, King Engraving argues that YETI's trade dress infringement claims must be dismissed because YETI "has failed to plausibly plead that YETI has a protectable trade dress that is nonfunctional." (Mot. Dismiss, Dkt. 64, at 3).

The Lanham Act gives the party asserting unregistered trade dress protection the burden to prove that a product's trade dress is not functional. 15 U.S.C. § 1125(a)(3). The nonfunctionality requirement "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (citation and quotation marks omitted).

---

[6] King Engraving asks the Court to take judicial notice of a series of webcapture images from King Engraving's website illustrating its advertisement of its drinkware. (Mem. Mot. Dismiss, Dkt. 65, at 17). YETI does not oppose King Engraving's request for the purposes of deciding this motion to dismiss. (Resp., Dkt. 72, at 15). The Court will grant King Engraving's motion as unopposed.

There are two tests to determine whether a product feature is functional. The traditional test is whether a feature is "essential to the use or purpose of the article or if it affects the cost or quality of an article." *Id.* Under this definition, "if a product feature is the reason the device works, then the feature is functional." *Id.* (citation and quotation marks omitted). The second test is the "competitive necessity" test, under which a feature is functional "if the exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Id.* at 356 (citation and quotation marks omitted). Even if individual constituent parts of a product's trade dress are functional, "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). The question, in other words, is not whether some component of a product's trade dress is functional, but whether the entirety of a product's trade dress is functional. *Id.*

Once again, the Court has previously considered whether YETI adequately pleaded nonfunctionality for the trade dress of several of the products at issue in this case. In both *Imagen Brands* and *Magnum Solace*, the Court found that it was plausible that the whole collection of elements that YETI alleges to comprise its products' trade dress is functional. *Imagen Brands*, 2017 WL 2199012, at *5; *Magnum Solace*, 2017 WL 5515910, at *5. YETI's alleged trade dress in this case contains the same collection of elements—including the taper of the side walls for the 30 oz. and 20 oz. tumblers, the color contrast between the tumbler or beverage holder and the lid or upper band, and the style line—as did its complaints in *Imagen Brands* and *Magnum Solace*. *Id.* Just as the facts alleged in those cases were sufficient to meet YETI's pleading requirements, so too are they sufficient here.

King Engraving attempts to distinguish this case by pointing out that the defendants in *Imagen Brands* and *Magnum Solace* failed to argue that YETI's drinkware shares a variety of design

16

similarities with preexisting drinkware, such as 7-11's Big Gulp™ and Thermos'® Vacuum Insulated Beverage Can Insulator. (Mem. Mot. Dismiss, Dkt. 65, at 14; Reply, Dkt. 75, at 5). According to King Engraving, "there is nothing non-functional or unique about the size, shape, or materials used by YETI—in any combination—that has not been a functional component of insulated drinkware historically." (*Id.*). King Engraving's position is that, in light of these other insulated drinkware products, YETI must "plead that King Engraving is using the same components in a non-functional fashion." (*Id.*). King Engraving also argues that YETI also failed to provide facts "demonstrating which features of the claimed trade dress are non-functional." (Reply, Dkt. 75, at 5).

As an initial matter, King Engraving's premise—that YETI's drinkware trade dress simply copies the functional elements of preexisting drinkware—overstates the similarities between YETI's products and preexisting products. 7-11's Big Gulp™ is not made of stainless steel, it has no style line, and a different lid. (Mem. Mot. Dismiss, Dkt. 65, at 1). The Thermos® beverage holder features a rubber grip with patterned indentations, a black base, and no style line. (*Id.* at 2). The lowball is a style of drinkware that comes in a variety of shapes, sizes, and materials; one of King Engraving's exemplars is made of clear glass. (*Id.*). Each one of these products has features that are not part of YETI's trade dress and lack features that are. Some of them do not look remotely like the YETI products at issue in this case. It is unclear, then, how those drinkware products establish that the whole collection of features that allegedly comprise YETI's trade dress is essential and therefore functional. These products thus do not render it implausible that YETI's trade dress is nonfunctional.

More to the point, even though "functional features [such as the cupholder-sized lower portion of a 30 oz. tumbler] cannot be protected . . . a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana*, 932 F.2d at 1119. Even if King Engraving is correct, its argument does no more than prove that

17

certain features of YETI's trade dress are functional. Nothing in King Engraving's argument is evidence that the combination of features that comprise YETI's trade dress are not a "particular arbitrary combination of functional features" that properly enjoys protection. *Id.* YETI has sufficiently alleged that its trade dress is nonfunctional.

## V. Trade Dress Dilution

YETI also asserts claims for trade dress dilution under state and federal law. (Am. Compl., Dkt. 41, at 16, 23). King Engraving argues that YETI has failed to state a claim under federal or state law because it has not adequately pleaded that its trade dress is famous. (Mot. Dismiss, Dkt. 64, at 3).

In order to pursue a dilution claim under either federal or state law, a plaintiff must allege that its trade dress is famous. 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.").[7] To determine whether a plaintiff has sufficiently alleged fame for purposes of federal claims, courts may consider "all relevant factors, including . . . (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark . . . (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; and (iv) [w]hether the mark was registered . . . ." *Id.* at § 1125(c)(2)(A)(i)–(iv).[8]

YETI alleges that it has "extensively and continuously promoted and used its trade dress in the United States and in the State of Texas." (Am. Compl., Dkt. 41, at 17). Through that "extensive

---

[7] Texas law imposes the same requirement, albeit with a different geographic scope. TEX. BUS. & COM. CODE § 16.103(a) (requiring a plaintiff to allege that its trade dress is "widely recognized by the public throughout this state or in a geographic area in this state").

[8] Likewise, Texas law directs courts to consider similar factors. TEX. BUS. & COM. CODE § 16.103(b)(1)–(4) (listing factors such as "the duration, extent, and geographic reach of the advertisement and publicity of the mark in [Texas]"; the "amount, volume, and geographic extent of sales", the "extent of actual recognition of the mark"; and "whether the mark is registered").

18

and continuous use," YETI alleges that its trade dress "has become a famous well-known indicator of the origin and quality of YETI's products" thoughout the United States. (*Id.* at 24). YETI alleges that because of the "use, advertising, and sales" of its drinkware, along with "the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous." (*Id.* at 10). The Court found substantially similar allegations to be sufficient to survive motions to dismiss in both *Imagen Brands* and *Magnum Solace*. *Imagen Brands*, 2017 WL 2199012, at *8–9; *Magnum Solace*, 2017 WL 5515910, at *7.

King Engraving argues that the Court should decide this case differently because "[t]he *Imagen* [d]efendants failed to make an issue of the fact that YETI omitted important facts in its complaint." (Mem. Mot. Dismiss, Dkt. 65, at 15). King Engraving does not identify which missing facts would make a difference here, nor is it obvious from King Engraving's filings what those facts might be. YETI need only plead a plausible claim for relief at this stage. The Court therefore finds, as it did before, that YETI has done so with respect to its dilution claims.

### VI. Misappropriation and Unjust Enrichment

Finally, YETI asserts claims for common-law misappropriation and unjust enrichment. (Am. Compl., Dkt. 41, at 32–34). On the premise that YETI has not adequately pleaded infringement of its trademarks or trade dress, King Engraving argues that YETI has failed to state a claim for each of these causes of action. (Mot. Dismiss, Dkt. 64, at 2–3; Mem. Mot. Dismiss, Dkt. 65, at 15–16). Because King Engraving's arguments for dismissal of these causes of action are derivative of its arguments concerning YETI's trademarks and trade dress, the Court rejects them for the same reasons it rejected King Engraving's trademark and trade dress arguments.

### VII. Conclusion

For these reasons, the Court **DENIES** King Engraving's Motion to Dismiss. (Dkt. 64).

**SIGNED** on March 9, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE